IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN GEIL**, | Case No. 3:13-cv-01392-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** Acting Commissioner of Social Security, | |
| Defendant. | |

Tim Wilborn, WILBORN LAW OFFICE, P.C., P.O. Box 370578, Las Vegas, NV 89137. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201; Gerald J. Hill, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

John Geil seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying his application for disability insurance

benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the

PAGE 1 – OPINION AND ORDER

Social Security Act. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is free of legal error and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted). On the other hand, the Court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226. But as long as "the agency's path may reasonably be discerned," the Court must affirm the agency's decision, even though the agency may have explained it with "less than ideal clarity." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

## BACKGROUND

Mr. Geil was born on January 10, 1964. He fractured his hip in 1992 and suffered a brain aneurysm in 1995, but he continued working and does not allege that he become disabled until May 1, 2009, at 45 years of age. On August 19, 2009, he protectively filed for DIB and SSI. His claim was initially denied on January 27, 2010, and again upon reconsideration on August 27,

PAGE 2 – OPINION AND ORDER

2010. He then requested an administrative hearing before an ALJ, which took place on October 27, 2011. The ALJ also denied his claim, finding that he was not disabled within the meaning of the Social Security Act from May 1, 2009, through the date of the decision, December 29, 2011. The Appeals Council denied review, making the ALJ's decision final and entitling Mr. Geil to review by this Court. 42 U.S.C. § 405(g).

## A. The Five-Step Disability Inquiry

A social-security claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, he or she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of

PAGE 3 – OPINION AND ORDER

        impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## B. The ALJ's Decision

At step one, the ALJ found that Mr. Geil had not engaged in substantial gainful activity since his alleged disability onset date, May 1, 2009. AR 19. At step two, the ALJ found that Mr. Geil had the following impairments which rose to the threshold level of "severe": "status post craniotomy, a seizure disorder, and degenerative joint disease of the left hip." *Id.*

PAGE 5 – OPINION AND ORDER

At step three, the ALJ did not find that Mr. Geil's severe impairments met or medically equaled any of the impairments found in the Listings. AR 20. The ALJ then assessed Mr. Geil's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to ten pounds. He can stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. He can occasionally climb, crouch, stoop, crawl, and kneel. He should not work around unprotected heights or dangerous machinery.

AR 21. In so finding, the ALJ considered evidence from the alleged date of disability onward, including reports from Calvin Hill, M.D.; a medical report about Mr. Geil's seizure in late 2009; a physical examination report from John Ellison, M.D.; a psychological examination by Spencer Griffith, Psy.D.; reports from several physicians from State Disability Determination Services; a questionnaire filled out by Dorothy Geil, the claimant's mother; and Mr. Geil's own testimony.

At step four, the ALJ found that Mr. Geil could not perform any of his past relevant work. AR 26. At step five, the ALJ asked the Vocational Expert ("VE") what work might exist in the national economy for a hypothetical individual with Mr. Geil's vocational factors and RFC. AR 62-63. Based on the VE's response, the ALJ found that Mr. Geil could perform at least three jobs that exist in significant numbers in the national economy: cannery worker, laundry folder, and garment sorter. AR 27. Accordingly, the ALJ found that Mr. Geil was not disabled. *Id.*

## DISCUSSION

Mr. Geil argues that the ALJ improperly rejected the medical opinion of Dr. Griffith, the lay opinion of Dorothy Geil, and the testimony of Mr. Geil himself. Mr. Geil contends, first, that

had those opinions been properly credited, his alleged depressive disorder NOS[1] should have been considered "severe" at step two; and second, that certain additional limitations should have been included in the hypothetical to the VE at step five.

## A.  Dr. Griffith's Opinion

Dr. Griffith examined Mr. Geil on October 17, 2011, just ten days before the ALJ hearing. His report was not available to the parties at the hearing. AR 35-36. Accordingly, the hearing focused largely on Mr. Geil's physical symptoms—seizures, headaches, and pain in the left hip, back, and knees. Although his depression came up briefly, it was not the focus or the emphasis of the discussion. Mr. Geil's petition, by contrast, relies heavily on purported limitations flowing from the depression.

An ALJ must provide "clear and convincing reasons that are supported by substantial evidence" to reject the uncontradicted opinion of an examining doctor. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). For example, an ALJ may "permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation marks and alterations omitted).

Furthermore, a doctor's particular statements "must be read in context of the overall diagnostic picture he draws." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). An ALJ may properly discount a doctor's opinion if it conflicts with the doctor's treatment notes, read in full and in context. *Holohan*, 264 F.3d at 1205.

---

[1] NOS stands for "Not Otherwise Specified." Depressive disorder NOS is a catch-all category of "disorders with depressive features that do not meet the criteria for Major Depressive Disorder [and other specifically defined depressive disorders]." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 381 (4th ed. text revision 2000).

Finally, if an ALJ has properly discounted a claimant's self-reporting as incredible, he may also reject an examining doctor's opinion that is based largely on the claimant's own reporting, "with little independent analysis or diagnosis." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In such a case, the doctor's opinion may properly be assigned the same weight as the claimant's own testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, Dr. Griffith conducted a clinical diagnostic interview and ran a comprehensive battery of cognitive and neuropsychological tests on Mr. Geil. Dr. Griffith's report runs for fourteen pages: The first four pages consist of Mr. Geil's medical and other history and are derived largely from the interview of Mr. Geil himself.[2] These are followed by five pages of mental-status testing and observation; three pages of summary, diagnosis, and recommendations; and at the very end, a two-page form styled "Mental Residual Function Capacity Report."

In the diagnosis section, Dr. Griffith evaluated Mr. Geil's global assessment of functioning ("GAF") at 42, and opined that Mr. Geil has depressive disorder NOS. But Dr. Griffith's diagnosis is brief and summary, with little indication of its basis: "John appears to have a significant, recurrent depression that seems to be substantial in its effects." AR 662. Indeed, reviewing the preceding nine pages of interview and test results reveals that Mr. Geil's depression is mentioned only twice, briefly, and only in the interview portion. Moreover, despite this diagnosis of depression, Dr. Griffith's overall prognosis is quite positive:

> John's overall level of cognitive and neuropsychological capabilities are *somewhat above expected*. . . . John appears to have grossly average and above abilities in most areas. Relative weakness in processing speed and minor delayed memory issues

---

[2] Dr. Griffith noted no medical or other records in his "Sources of Information" and observed that "[n]o past neurological records were available for review." AR 653, 655.

PAGE 8 – OPINION AND ORDER

> were observed, but these are *not believed to cause significant impairment in personal, daily functioning*.

AR 662 (emphasis added).

In the two-page form at the end, however, Dr. Griffith checked off boxes indicating that Mr. Geil has "[m]arkedly [l]imited" abilities to maintain a schedule, to be punctual, to "complete a normal workday and workweek without interruptions from psychologically based symptoms" and to "perform at a consistent pace without an unreasonable number and length of rest periods." AR 665. It is these latter limitations, as well as the GAF score of 42, on which Mr. Geil now bases his argument for a finding of disability. But Dr. Griffith provided no explanation for either the GAF or the purported limitations he checked off. *Cf. Molina*, 674 F.3d at 1111 (permitting an ALJ to reject "check-off reports that do not contain any explanation of the bases of their conclusions"). And both of those assessments are at odds with the largely positive test results and prognosis that make up the majority of Dr. Griffith's report. *Cf. Holohan*, 264 F.3d at 1205 (affirming rejection of a doctor's medical opinion when it conflicted with his treatment notes). Finally, both the GAF and the diagnosis of depression seem to be largely based on Mr. Geil's self-reporting, which, as discussed below, the ALJ found less than wholly credible. *Cf. Tonapetyan*, 242 F.3d at 1149 (affirming an ALJ's discounting of a doctor's opinion that was based on an incredible claimant's testimony).

The ALJ may not have stated his reasoning with crystal clarity, but his "path may reasonably be discerned." *Cf. Molina*, 674 F.3d at 1121. And although other inferences may be drawn from the record, the ALJ's reasons are clear and convincing, and they are supported by substantial evidence. This Court may not, therefore, substitute its judgment for that of the ALJ. *See Burch*, 400 F.3d at 679.

B.  Dorothy Geil's Testimony

Dorothy Geil, Mr. Geil's mother, lives in Arizona. She does not see her son, who lives in Tillamook, Oregon, very frequently. In the summer of 2009, however, she visited and lived with him and his daughter for some months. The following October, she filled out a "function report" questionnaire describing his condition, AR 173-180, and another questionnaire that inquired specifically about seizures, AR 181-84.

Lay witnesses are competent to give testimony about a claimant's symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). They are not, however, competent to provide medical diagnoses. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discount competent lay witness testimony by "giv[ing] reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Here, Ms. Geil made a number of statements that Mr. Geil argues should be credited as true: that he sleeps a lot, that he has difficulty with sustained mental activity and concentration, that he sometimes forgets his medications, that he has trouble keeping up with a checkbook, that he does not always handle change well, that he can be short-tempered, and that he has problems lifting, squatting, bending, and kneeling. Ms. Geil also answered "don't know" to many of the questions, especially on the seizure questionnaire, and noted that she only sees Mr. Geil once every year or two. AR 184.

The ALJ gave "little weight" to Ms. Geil's report for two reasons: first, because she spends most of her time in Arizona and answered "don't know" to many questions, indicating "a lack of familiarity with the claimant"; and second, because some of her statements were inconsistent with the record. AR 25. The inconsistencies are sufficient to affirm. The ALJ offered one example—Ms. Geil's claim that Mr. Geil sometimes forgot his medications, AR 175, when Mr. Geil was in fact taking no medications at the time—for which Mr. Geil now offers

PAGE 10 – OPINION AND ORDER

another interpretation consistent with the record. But where the evidence may rationally be interpreted in more than one way, the ALJ's inference must be upheld. *Burch*, 400 F.3d at 679. In any case, other inconsistencies abound, such as Ms. Geil's own later assertion that Mr. Geil does *not* have difficulty taking prescribed medications. AR 183. The ALJ's adverse credibility determination was rational and supported by substantial evidence.

### C. Mr. Geil's Testimony

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

PAGE 11 – OPINION AND ORDER

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1997 (9th Cir. 2004).

On being questioned by his attorney, Mr. Geil testified to a number of limitations that he now argues were improperly discounted and should be credited as true. He testified that toward the end of his most recent employment, he was missing at least two days a month due to arthritis

and headaches. AR 53-54. He also testified that he now gets those headaches two to three days a week, and that he deals with them by going to bed. AR 54. He further testified that he needs to change positions constantly and is "never really out of pain." AR 54-55.

Mr. Geil also testified that he is able to get his daughter to school every morning and that he is "physically able" to do necessary housework but usually would not complete it. AR 58-59. He expressed doubts as to whether, due to his pain, he could do even light work for a full week or on an ongoing basis. AR 55-56. Finally, he testified that on a scale of one to ten, where ten is "the kind of pain that people want to blow their brains [out] at," he experiences a ten every morning, after which it lowers temporarily, but then increases throughout the day if he engages in any activity. AR 59-60.

The ALJ found Mr. Geil "only partially credible" and accorded his testimony "only some weight." AR 25. The ALJ found that Mr. Geil's ability to be a single parent to his child was inconsistent with his claim of total disability. The ALJ further found that Mr. Geil's "failure to seek regular medical and psychological care belies his allegations of disabling pain and depression." AR 26. Finally, the ALJ found that Mr. Geil had worked for many years between the injuries alleged to cause his symptoms and May 2009, his alleged onset date, and that the record did not support any significant worsening of symptoms after May 2009.

Mr. Geil met the first prong of the test: He provided objective medical evidence of underlying impairments that could cause pain and depressive symptoms. Accordingly, the issue is whether the ALJ properly rejected Mr. Geil's testimony about the degree of his symptoms. First, with regards to specificity, the ALJ did make some very general statements—for example, that "[o]verall, the medical record is not the type of record one would expect for a totally disabled individual." AR 26. But the ALJ's reference to "allegations of disabling pain and

PAGE 13 – OPINION AND ORDER

depression" and symptoms resulting from Mr. Geil's mid-1990s craniotomy and hip injury is "sufficiently specific" for this Court to review. *Cf. Orteza*, 50 F.3d at 750.

Next, Mr. Geil argues that the ALJ's reliance on Mr. Geil's ability to care for his child as a daily activity inconsistent with disability was legally and factually improper. As a legal matter, the Ninth Circuit has explained that "attending to the needs of [one's] . . . young children" can be inconsistent with a claim of disability. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). And as a factual matter, although Mr. Geil claims that his ability to care for his child is so poor that he has been charged with child neglect, the record suggests that the neglect charge was related to a felony drug offense: "Last year, John had his first felony offense for drug charges and child neglect." AR 653.

Finally, Mr. Geil argues that his failure to seek mental-health treatment is itself a product of his mental impairments and brain injury, and should not be used against him. This argument merits consideration. *See Nguyen*, 100 F.3d at 1465 ("[D]epression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness."). But Mr. Geil also alleged debilitating pain—ten out of ten, every day—but sought no treatment for that, either. On the whole, Mr. Geil's daily activities and failure to seek treatment are sufficiently clear and convincing to support the ALJ's adverse credibility determination. *Cf. Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (holding that failure to seek treatment for depression "bolster[ed] the ALJ's finding"); *Burch*, 400 F.3d at 681 (similar for back pain and depression).

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Mr. Geil is not disabled.

**IT IS SO ORDERED**.

PAGE 14 – OPINION AND ORDER

DATED this 22d day of September, 2014.

    /s/ Michael H. Simon
    Michael H. Simon
    United States District Judge

PAGE 15 – OPINION AND ORDER